(C.D. 2297)

AMERICAN NICKELOID COMPANY *v.* UNITED STATES (AUT CUSTOMS BROKERS, INC., A/C A. PLEIN & CO., INC., PARTY IN INTEREST)

United States Customs Court, Second Division

(Decided November 30, 1961)

*D'Ancona, Pflaum, Wyatt & Riskind* (*Edgar Bernhard* and *Merrill A. Freed* of counsel) for the plaintiff.
*William H. Orrick, Jr.*, Assistant Attorney General (*Alfred A. Taylor, Jr.*, trial attorney), for the defendant.
*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the party in interest.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: Plaintiff, an American manufacturer of pre-plated metals, brought this action by protest pursuant to the provisions of section 516(b) of the Tariff Act of 1930, as amended (19 U.S.C. § 1516(b)).

The protest challenges the dutiable classification by the collector of customs of two importations by the party in interest of preplated metals of a "class or kind" manufactured by the plaintiff. The importations are identified as follows:

| Entry No. | Entry date | Invoice description | Date of liquidation |
|---|---|---|---|
| 765894 | 9/17/58 | Nickel plated steel strip polished * * * .010"x⅞" | 11/14/58 |
| 774019 | 9/26/58 | Chrome plated steel strip polished * * * .017"x2¾" .017"x2" | 11/21/58 |

As will appear later, issue is joined only as to entry 765894, which was the first of the two entries to be liquidated.

The collector classified the merchandise as steel in strips in chief value of steel, polished and plated, in paragraph 316(a) of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 316(a)), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, at the appropriate rates provided therein, with an additional assessment at the trade agreement rate specified in paragraph 315 of said act (19 U.S.C. § 1001,

par. 315), as modified by the Annecy protocol to said general agreement, 84 Treas. Dec. 403, T.D. 52373, supplemented by Presidential proclamation, 85 Treas. Dec. 116, T.D. 52462.

Plaintiff contends that the merchandise is not steel strips of the kind specified in said paragraphs 316(a) and 315, *supra*, and should be classified as an article in chief value of metal, not specially provided for, in paragraph 397 of said act (19 U.S.C. § 1001, par. 397), as modified by the Sixth protocol, *supra*, and dutiable at the rate of 19 per centum ad valorem.

The relevant text of the pertinent statutes is here set forth:

Section 516(b) of the Tariff Act of 1930, as amended:

(b) CLASSIFICATION.—*The Secretary of the Treasury shall, upon written request by an American manufacturer*, producer, or wholesaler, *furnish the classification of*, and the rate of duty, if any, imposed upon, *designated imported merchandise of a class or kind manufactured*, produced, or sold at wholesale *by him.* If such manufacturer, producer, or wholesaler believes that the proper rate of duty is not being assessed, he may file a complaint with the Secretary, setting forth a description of the merchandise, the classification, and the rate or rates of duty he believes proper, and the reasons for his belief. If the Secretary decides that the classification of, or rate of duty assessed upon, the merchandise is not correct, he shall notify the collectors as to the proper classification and rate of duty and shall so inform the complainant, and such rate of duty shall be assessed upon all *such merchandise* entered for consumption or withdrawn from warehouse for consumption after thirty days after the date such notice to the collectors is published in the weekly Treasury Decisions. If the Secretary decides that the classification and rate of duty are correct, he shall so inform the complainant. If dissatisfied with the decision of the Secretary, the complainant may file with the Secretary, not later than thirty days after the date of such decision, notice that he desires to protest the classification of, or rate of duty assessed upon, the merchandise. Upon receipt of such notice from the complainant, the Secretary shall cause publication to be made of his decision as to the proper classification and rate of duty and of the complainant's desire to protest, and shall thereafter furnish the complainant with such information as to the entries and consignees of *such merchandise*, entered after the publication of the decision of the Secretary at the port of entry designated by the complainant in his notice of desire to protest, as will enable the complainant to protest the classification of, or rate of duty imposed upon, *such merchandise in the liquidation of such an entry at such port. The Secretary shall direct the collector at such port to notify such complainant immediately when the first of such entries is liquidated.* Within thirty days after the date of mailing to the complainant of notice *of such liquidation*, the complainant may file with the collector at such port a protest in writing setting forth a description of the merchandise and the classification and rate of duty he believes proper. * * * [Italics supplied.]

Paragraph 316(a) of said act, as modified:

All flat wires and all steel in strips not thicker than ¼ inch and not exceeding 16 inches in width, whether in long or short lengths, in coils or otherwise, and whether rolled or drawn through dies or rolls, or otherwise produced:

Not thicker than 0.01 inch_____ 6% ad val.
Thicker than 0.01 inch but not thicker than 0.05 inch_____ 8½% ad val.

Paragraph 315 of said act, as modified:

All strips, plates, or sheets of iron or steel of whatever shape, other than polished, planished, or glanced sheet iron or sheet steel, which are cold hammered, blued brightened, tempered, or polished by any process to such perfected surface finish or polish better than the grade of cold rolled, smoothed only _____ 1/10¢ per lb. in addition to the rates provided on plates, strips, or sheets of iron or steel of common or black finish of corresponding thickness or value

Paragraph 397 of said act, as modified:

Articles or wares not specially provided for, whether partly or wholly manufactured:

\*     \*     \*     \*     \*     \*     \*

Composed wholly or in chief value of iron, steel, copper, \* \* \* nickel \* \* \*_____ 19% ad val.

At the threshold of the case, a jurisdictional question is presented which must first be decided. Prior to the introduction of testimony, the court inquired of counsel if the jurisdictional requirements of section 516 had been complied with, and counsel for the party in interest stated, in part:

\* \* \* I will say this, that this protest is directed against two liquidations, one taking place on November 14, 1958, and the second taking place on November 21, 1958. And this division held, your Honor writing the opinion for the division, in the case of *The Oronite Co., Inc.* v. *United States*, C.D. 1847, that a protest under section 516 could lie only against the first liquidation.

Here he filed a protest against two liquidations, and I think we will be constrained to argue that the protest against the second liquidation is null and void.

In its brief, the party in interest contends that the second entry herein is not before the court because of the clause in section 516(b) which reads:

"The Secretary shall direct the collector at such port to notify such complainant immediately when the first of such entries is liquidated"; and further that "Within thirty days after the date of mailing to the complainant of notice of such liquidation, the complainant may file with the collector at such port a protest in writing. . . ."

In the *Oronite* case, 38 Cust. Ct. 76, C.D. 1847, 150 F. Supp. 754, two protests had been filed upon the same type of merchandise but of different thicknesses, and the entries covering the merchandise had been liquidated on different dates. We there held that the protest filed against the second liquidation was unauthorized by the statute

and that our jurisdiction had not properly been invoked, and the protest was dismissed.

Although cross-appeals were filed in the *Cronite* case, the assignment of error against the dismissal of one of the protests was abandoned. *W. E. Sellers (Party in Interest, Doing Business as John Sellers & Sons)* v. *The Cronite Co., Inc.*, 45 C.C.P.A. (Customs) 27, C.A.D. 668.

It is true that, in the *Cronite* case, there were two protests against two separate liquidations, whereas, in the instant case, we have one protest against two separate liquidations. Nevertheless, we are constrained to hold that the protest should be dismissed insofar as it relates to entry number 774019, upon which the second liquidation was made, by reason of the statutory requirements in section 516(b), *supra*, that the collector shall notify the complainant immediately when the *first* entry is liquidated and the further provision that, within 30 days after the date of mailing to the complainant of notice of *such* liquidation, the complainant may file a protest with the collector. Accordingly, an order will issue dismissing the instant protest, insofar as it relates to merchandise covered by entry 774019.

For the reasons above stated, we shall confine ourselves in the main to a consideration of the proper dutiable classification of the nickel-plated steel strips covered by entry 765894, which was the first of the two entries to be liquidated.

The evidence taken at the trial consists of the testimony of six witnesses called by the plaintiff, together with exhibit 1, representing the chrome-plated steel strip of entry number 774019 (which is not now in issue), and exhibit 2, representing the nickel-plated steel strip of entry number 765894.

Plaintiff's first witness, Clarence P. Stewart, had been associated with the plaintiff company for 31 years, having been plant manager for about 27 years. The business of his company is the production of preplated and prepolished metals. Stewart recognized exhibit 2 as nickel-plated steel, plated by the electrolytic process. He stated that the merchandise was used in the housewares industry for the manufacture of breadboxes, cannister sets, sanitary cans, escutcheon plates, "and similar items of that kind." In the housewares field, chrome-plated steel is mostly used because nickel-plated steel would tarnish. He stressed the point that the important function of a preplated metal is to "enhance the eye appeal of the product," as, for instance, on the door front of a refrigerator or stove; that the advantage of using preplated metal is that a finished plated product may be stamped out of it, replacing the obsolete method of stamping articles out of unplated steel strips and subjecting them to a plating process after they have been shaped.

Stewart had tests made under his supervision at the University of Illinois to determine what changes took place when raw steel is plated by the electrolytic process; that, as a result of "X-ray diffraction, electron diffraction, and reflectivity studies of pre-plated metal," it was found that there was "an interdiffusion of the atoms of one metal into the atoms of the other metal," that is, "the atoms of copper would migrate into the steel, the atoms of steel or iron, properly speaking, would migrate into the copper. The atoms of nickel would migrate into the copper, or if the nickel was plated directly on the steel the atoms of nickel would migrate into the structure of iron, the structure of the base metal. And the reverse would take true." Whether steel be electrolytically plated with copper or nickel or copper and nickel, there is an "inter-penetration" of the metal. On the other hand, if raw steel, instead of being treated by an electrolytic process, were painted or lacquered, there would be no exchange of atoms between the paint or lacquer and the steel.

On cross-examination, Stewart would not agree that "plating of steel is just a coating process." He regarded electro-deposition as an art which involves many technical details and a processing which has to be carefully controlled, whereas coating may be simply a surface layer. When steel and nickel and copper are combined electrolytically, they cannot be separated.

Leonid Azaroff testified that he is an associate professor in the Metallurgical Engineering Department of the Illinois Institute of Technology with a bachelor's degree in physics from Tufts University, a Ph. D. from the Massachusetts Institute of Technology, and author and coauthor of books dealing with the crystallography of solids, including metals. He defined crystallography as "a study of solid matter, the internal atomic structure of solids, including any solid that's crystalline as distinct from the glassy state, of which metals would be an obvious example."

Dr. Azaroff, who was well qualified in the field of metallurgy, testified primarily to tests made of exhibit 1, representing chrome-plated steel strip. He also described the electrolytic process by which nickel or nickel and chrome are deposited upon steel. He stated that his answers to questions regarding exhibit 1 would not be different if asked concerning exhibit 2, the nickel-plated strip steel. His testimony corroborates that given by the witness Stewart.

Carl Struever testified that, since 1930, he has been general manager and chairman of the board of the plaintiff company; that, in 1930, pre-plated steel was on an experimental basis and did not become available on the market until "along about the middle of the 1930's, 1934, 1935." Prior to 1930, their principal product was preplated, prefinished zinc sheets and prefinished tinplate sheets. He stated that preplated steel,

such as exhibit 2, was used primarily for the manufacture of parts where appearance is a factor.

Harry F. Erlenborn testified that he was in the accounting and financial end of the business, having been with the plaintiff company some 24 years. Plaintiff's effort to establish the difference in value between plated and unplated steel proved ineffective. However, the party in interest conceded that plated steel costs more than unplated steel.

Neal C. McNutt testified that he is vice president of sales of the strip-steel division of the Acme Steel Co., Chicago, and had held other responsible positions with that company for the past 34 years, engaged in selling steel strip products. He characterized strip steel and sheet steel as products of a steel mill, such as the Acme Co.; that prefinished steel, nickel-plated, is not recognized as a steel mill product.

Plaintiff's last witness, Aart J. Gilissen, testified that he has been chief product engineer of the Cory Corp. about 14 years. His company purchases steel and he specifies the type of metals and finishes to be used on the metals. He is familiar with strip steel, unplated and preplated. His company's unplated steel strip is used in the construction of the interior portions of household appliances, which are not observed by the public, such as internal chassis, internal motor supports, knife sharpeners, electric can openers, and various other uses. His company specifies prefinished steel "wherever we need eye appeal. For instance, all nameplates are pre-finished strip steel." In other words, prefinished steel is specified wherever decorative qualities are desired.

On cross-examination, Gilissen would not admit that "plating is simply a coating." It was his opinion that "Coating means a coat of paint or lacquer or varnish. * * * We do not use in our products anything that merely rests on the surface that does not become integral with the metal."

The party in interest invites our attention to the fact that "* * * there is not a shred of evidence as to the precise manner of production, or the exact materials used, or their value, in manufacturing the imported products, except the concession that they are chrome-plated and nickel-plated steel respectively, and were plated by the electrolytic process. There is no proof, for instance, that any copper was used in producing the imported merchandise."

Unfortunately, the record does not contain a copy of plaintiff's complaint filed with the Secretary of the Treasury setting forth a clear description of the merchandise being considered. However, the collector of customs, in his letter attached to the protest, refers us to T.D. 54658, which is reported in 93 Treas. Dec. 343. There, we have an official communication addressed to collectors of customs by the Commissioner of Customs approving the practice of classifying pre-

plated metal strips in chief value of steel as strips of steel in paragraphs 316 and 315 of the Tariff Act of 1930. From this communication, it clearly appears that the plaintiff in the case now before us was a domestic manufacturer of preplated metal sheets and strips, who had requested information from the Secretary of the Treasury regarding the classification of imported preplated metal sheets and strips. As a matter of fact, it was admitted at the trial by counsel for the party in interest that "there is no dispute about the fact that the merchandise is nickel-plated steel in one case * * * no dispute about that."

We are clearly of the opinion, from an examination of T.D. 54658, *supra*, and the subsequent administrative procedure, pursuant to section 516, that nickel-plated steel in strips to which the protest herein relates is "merchandise of a class or kind manufactured" by the plaintiff, within the meaning of said section 516.

Upon the facts of record, plaintiff cites *Hirsch & Co. et al.* v. *United States*, 4 Ct. Cust. Appls. 82 (1913), T.D. 33365, as a leading case on the question in issue here and which should control the classification of the subject merchandise.

The merchandise before the court, in that case, was nickel-plated steel strips, which had been classified in paragraph 199 of the Tariff Act of 1909, 36 Stat. 11, the catchall provision for articles or wares of metal, whether partly or wholly manufacured. The importers claimed that the merchandise should be classified as strips of steel in paragraph 124 of said act, which was subject to an additional duty provided in paragraph 128 for steel sheets, when galvanized or coated with other metals.

In the course of its opinion, our appellate court stated "* * * that steel constitutes the body of the article; that the steel body is subjected to a galvanizing process, whereby it is first treated with copper and then entirely plated with nickel; that the steel body composes the greater bulk of the finished article, but apparently the nickel has relatively the greater value; that the article is commercially known as strip steel nickel plated. The metal is used in the manufacture of novelties, buttons, buckles, and watchcases."

The court further observed:

In answer to the question presented by the record it may be said that although the merchandise was strips of steel in its first estate, it nevertheless became something more than that when it was subsequently plated with nickel. * * * It can hardly be doubted that some change in the classification and assessment of the article must follow upon such a substantial change in its component materials, its use, and value. * * *

In conclusion, the court observed that—

* * * when the steel strips were plated with nickel * * *, not being specifically enumerated in their advanced condition, they properly fall within the general provisions of paragraph 199 for manufactures of metal not specially

provided for. Victor *v.* United States (128 Fed., 472) ; Eckstein *v.* United States (140 Fed., 94).

Other cases relied upon by plaintiff will receive further consideration, *infra.*

The party in interest, on the other hand, regards the following two cases decided by this court as determinative of the issue in controversy: *John A. Steer & Co.* v. *United States,* 57 Treas. Dec. 781 (1930), T.D. 44041; *Ad M. Schmid & Co.* v. *United States,* 67 Treas. Dec. 870 (1935), T.D. 47722.

In the *Steer* case, the merchandise consisted of galvanized steel strips, which had been classified as articles of metal in paragraph 399 of the Tariff Act of 1922, 42 Stat. 858, the predecessor of paragraph 397 of the Tariff Act of 1930, 46 Stat. 590. In its opinion, this court quoted the pertinent portion of paragraph 316 of the Tariff Act of 1922, which was relied upon by the importer, reading as follows:

* * * all flat wires and all steel in strips not thicker than one-quarter of one inch and not exceeding sixteen inches in width, whether in long or short lengths, in coils or otherwise, and whether rolled or drawn through dies or rolls, or otherwise produced, 25 per centum ad valorem : *Provided,* That all wire of iron, steel, or other metal coated by dipping, galvanizing, sherardizing, electrolytic, or any other process with zinc, tin, or other metal, shall pay a duty of two-tenths of 1 cent per pound in addition to the rate imposed on the wire of which it is made ; * * *.

The Government contended that the proviso in the statute, above quoted, confined itself to wire, galvanized, but was silent as to steel strips, galvanized; that, consequently, steel strips, galvanized, should be classified as articles of metal, not specially provided for. The court, however, applying the rule of interpretation "that the exception of a particular thing from general words proves that, in the opinion of the lawgiver, the thing excepted would be within the general clause had the exception not been made," concluded "* * * that galvanized wire would have been classifiable under the general provision for wire if Congress had not excepted it for additional duty. It made no such discrimination in the case of galvanized strips of steel."

In view of earlier cases, to which reference will be made, *infra,* it would seem that the court erred in placing the construction it did upon paragraph 316 of the Tariff Act of 1922. Paragraph 135 of the Tariff Act of 1909, like paragraph 316 of the Tariff Act of 1922, provided for steel in strips, without regard to coating or plating, and also provided for iron or steel wire, "* * * coated by dipping, galvanizing or similar process with zinc, tin, or other metal, * * *." Paragraph 124 of the Tariff Act of 1909, reviewed in the *Hirsch* case, also contained a provision for steel in strips.

In the Tariff Act of October 3, 1913, 38 Stat. 114, nickel sheets and strips were provided for without qualification in paragraph 155. In the Tariff Act of 1922, as above indicated, steel in strips was provided for in paragraph 316, without reference to coating or plating, and it should be presumed that Congress used the term "steel in strips" with its known interpretation by our appellate court in the *Hirsch* case, *supra*.

The *Schmid* case, *supra*, related to steel in strips, plated with nickel, the steel being 14 times as valuable as the nickel. Here, again, this court distinguished *Hirsch* and followed its earlier decision in the *Steer* case, which related to galvanized steel strips.

At this point, it is interesting to trace briefly the judicial history dealing with steel in strips, plated, and also zinc in sheets, plated, the two subjects being closely interwoven.

The *Hirsch* case, above discussed, cited as a supporting authority *Victor* v. *United States*, 128 Fed. 472. That case was decided by the circuit court, southern district, New York, January 29, 1904. It related to an importation of zinc in sheets, nickel-plated. The importer claimed it should be classified as zinc in sheets of the kind provided for in paragraph 192 of the Tariff Act of July 24, 1897. With respect to the claim of importer that the commodity was, in fact, zinc in sheets, the court observed:

\* \* \* It is true that they are zinc in sheets, but they are more than that. Zinc in sheets does not accurately cover them. It requires the added description of "nickel-plated" to include them. Therefore they do not fall exactly or substantially within paragraph 192. They are articles or wares composed of zinc and nickel, wholly within the description of paragraph 193.

(Paragraph 193 of the Tariff Act of 1897 is, so far as pertinent here, substantially the same as paragraph 397 of the Tariff Act of 1930.)

The *Victor* case affirmed the decision of this court (then the Board of General Appraisers), reported in 6 Treas. Dec. 220 (1903), T.D. 24281, G.A. 5296. It is significant that the board, in the course of its opinion, stated that—"The precise question here involved arose under the act of 1883, and the Board in G.A. 78 (T.D. 10387) held that zinc in sheets plated with nickel was not dutiable as zinc in sheets. In the act of 1883, a provision appeared for 'plated and gilt articles and wares of all kinds,' and it was held that the sheets there in question were dutiable under this provision." G.A. 78, T.D. 10387, *supra*, is reported in Synopsis of Decisions, Treasury Department, 1890, page 527, October 27, 1890. The following is quoted from the opinion in that case, with respect to nickel-plated zinc sheets:

\* \* \* Each of these metals is provided for separately in the tariff act of March 3, 1883, under which act the merchandise in question is chargeable with duty, zinc at 2½ cents per pound and nickel at 15 cents per pound, when alloyed with other metals, provided it is the component part of chief value. This latter

contingency does not exist in the case under consideration. The quantity of nickel is sufficiently great, however, to remove the metal from classification under T.I., 193, and to this extent the appeal of the importer is rejected. Unembarrassed by other considerations, the substance would be a manufactured metal subject to the rate of duty exacted by you under the provisions of paragraph 216, which paragraph includes all non-enumerated manufactured metals or manufactures of metal.

*Eckstein* v. *United States*, 140 Fed. 94, also cited by our appellate court in *Hirsch* as a supporting authority, was decided by the circuit court for the southern district of New York, February 23, 1905, and was affirmed by the circuit court of appeals, second circuit, March 6, 1906, 145 Fed. 1021, in a *per curiam* opinion which reads, "Decision affirmed; approving decision of the Circuit Court, and of the Board of General Appraisers." That case related to nickel-plated zinc sheets, which the court held were not classifiable as zinc in sheets but fell within the provision for "* * * 'articles or wares not specially provided for, * * * composed wholly or in part of * * * nickel, * * * zinc, * * * or other metal,'" in paragraph 193 of the act of 1897. The court said in part "Zinc is an element by itself, and by that name merely nothing else would seem to be intended. Here is not only zinc in sheets, but zinc and nickel in the same sheets, which are not covered by 192, but are carried by the combination into 193." The court distinguished *Langerman & Petty* v. *United States*, 75 Fed. 1 (1896), pointing out that "* * * the coating seems to have been treated as an incident to, and not a component part of, the sheets; * * *." The merchandise in the *Langerman* case consisted of sheets of zinc, coated on one side with a preparation, suiting them for use by lithographers.

The court also distinguished *DeJonge* v. *Magone*, 159 U.S. 562, 16 Sup. Ct. 119, 40 L. ed. 260, involving the question of whether certain articles were, in fact, paper or manufactures of paper. In conclusion, the court adhered to the opinion expressed in *Victor, supra*.

The term "coated," as it appears in the metal schedules, received consideration by the board in *Stengel Bros. Co.* v. *United States*, 19 Treas. Dec. 1317 (1910), T.D. 31164. That case related to an importation of zinc in various forms, some of the forms consisting of zinc sheets covered with enamel paint, which were claimed to be classifiable as zinc sheets, coated or plated with nickel or other metal or solution, in paragraph 194 of the act of 1909. The board was clearly of the opinion that zinc sheets covered with enamel paint were not coated within the meaning of said paragraph 194. We quote from the opinion of the board, as follows:

It is clear to us that the provision in paragraph 194 for zinc in sheets, coated, in fact contemplates a zinc sheet *covered* with a metal. It matters not whether this is accomplished by coating, by plating, or by any other action, electrical or otherwise, and whether metal itself or a metallic salt in solution is used as the substance to apply as a metal covering on the sheet of zinc. * * * Cer-

tainly, with this idea in view, zinc sheets coated with an enamel paint would not be classifiable under paragraph 194. [Italics quoted.]

Careful research discloses that *Hirsch* has been cited at least 15 times and, whether followed or distinguished, it has been cited with approval but has never been overruled. On the other hand, *Steer* appears to have been cited in two cases, *Schmid*, above referred to, and *United States* v. *Globe Shipping Co., Inc.*, 31 C.C.P.A. (Customs) 95, C.A.D. 254, which related to "Cold rolled Steel Sheets lacquered one side, one colour."

In the course of its opinion in that case, the court made this significant observation:

We do not regard the process of applying the lacquer as being of any particular importance upon the issue here involved. Whatever it may have been, the resulting product was a steel sheet coated on one side.

Other cases of significance here are the following:

*Oelrichs & Co. et al.* v. *United States*, 24 Treas. Dec. 1152 (1913), Abstract 32969. It was held that nickel-plated steel strips in coils were properly classified in paragraph 199 of the Tariff Act of 1909, on the authority of the *Hirsch* case.

*Wm. Larzelere & Co.* v. *United States*, 28 Treas. Dec. 395 (1915), Abstract 37431. The merchandise was described as consisting of iron in the form of strips, which had been galvanized. The claim of importer that the merchandise should be classified as shapes of rolled or hammered iron in paragraph 120 of the Tariff Act of 1909 was over-ruled, and it was held to be properly classified as articles of metal in paragraph 199 of said act.

The court found that there was no evidence to show that the strips of steel were "shapes of iron" within the meaning of the statute, but the court observed:

Moreover, even though it were here established that such articles were properly shapes of iron within the purview of the said paragraph 120, they would nevertheless be excluded therefrom by reason of the fact that they have also been galvanized. On this point the decision of the Court of Customs Appeals in Hirsch v. United States (4 Ct. Cust. Appls., 82; T.D. 33365), which affirmed the ruling of this board in Abstract 30438 (T.D. 32926), is conclusive. It was there held that steel strips which had been nickel plated had thereby become something more than steel strips.

*L. C. Hirsch Co., Inc.* v. *United States*, 53 Treas. Dec. 884 (1928), Abstract 5172. Nickel-plated steel strips were held to be properly classified as articles, partly or wholly manufactured, in paragraph 399 of the Tariff Act of 1922, on the authority of *Hirsch* v. *United States*, 4 Ct. Cust. Appls. 82, T.D. 33365.

In its brief, the party in interest makes the rather dubious contention that:

\* \* \* Since the *John A. Steer* case (T.D. 44041), *supra,* was decided on May 16, 1930, prior to the passage of the act of 1930, we have a clear case of Congressional adoption of judicial interpretation. (*United States* v. *Dillingham,* 41 CCPA 221, C.A.D. 555; *United States* v. *Astra Trading,* 44 CCPA 8, C.A.D. 627).

When it is recalled that the Tariff Act of 1930 was approved by the President of the United States on June 17, 1930, it seems extremely doubtful that the Congress could have had notice of the *Steer* decision of May 16, a matter of 32 days prior to the approval of the act. Moreover, in no event may it be presumed that the Congress would know whether or not the *Steer* case may have been the subject of a motion for rehearing within the period of 30 days from May 16 or possible appeal, the time for which did not expire until July 15, 1930.

As a matter of fact, the doctrine of congressional adoption of judicial interpretation, so clearly expressed in the *Dillingham* and *Astra* cases, above cited, namely, that "Repeated reenactments in identical terms of a tariff provision, and without a substantial change in context, after the same has been construed in an authoritative decision, will be accepted as a legislative approval of the construction contained in that decision" would apply here to the decisions in the *Victor*, *Eckstein*, and *Hirsch* cases, interpreting the meaning of the statutory terms "zinc in sheets" and "steel in strips," beginning with the Tariff Act of 1883 and repeated in succeeding tariff acts to and including the Tariff Act of 1930.

Furthermore, it is fair to presume that Congress, in drafting the bill which later became the Tariff Act of 1930, was also informed of the decision of this court in *L. C. Hirsch Co., Inc.* v. *United States,* 53 Treas. Dec. 884, Abstract 5172, which was decided February 28, 1928. The court there held, on the authority of *Hirsch & Co. et al.* v. *United States,* 4 Ct. Cust. Appls. 82 T.D. 33365, that certain nickel-plated steel strips were properly classified in paragraph 399 of the Tariff Act of 1922.

Another case which lends some support to the classification of steel strips, nickel-plated, in the catchall metal paragraph is *United States* v. *Sutherland International Despatch, and E. P. Stephenson, Agents for Kearfott Engineering Co.,* 21 C.C.P.A. (Customs) 264, T.D. 46790. It was there held that so-called silent window channels, composed of a brass channel and felt, the felt lining the inner surfaces of the channel, was "something more than" brass channels, which were provided for by name in the tariff act, and were, accordingly, relegated to the general provision for articles in chief value of metal (brass).

While the subject matter there before the court was different from that in the instant case, the principle of law presented in the two cases was quite similar. In fact, the appellate court, in *Sutherland,* made the following observation: "A case somewhat analogous to the case

at bar, arising under the Tariff Act of 1909, is that of *Hirsch & Co. et al.* v. *United States*, 4 Ct. Cust. Appls. 82, T.D. 33365," from which it liberally quoted with approval. After quoting from the *Hirsch* case, the court went on to say:

While it is true that the court in that case made the observation that in the articles there involved the nickel apparently had relatively the greater value, the opinion does not indicate that such fact was material to the decision of the court.

The above-quoted language from the *Sutherland* case, which was decided in 1933, 20 years later than the *Hirsch* case and by the same appellate court, is a clear indication that the court did not regard chief value as of controlling significance in determining the classification of plated steel strips and plainly negatives the contention of the party in interest, stated in its brief, as follows:

It is thus apparent that the decisive test in determining whether coated or plated steel strip is classifiable under Par. 316 is simply this: Is it composed in chief value of steel?

The window channels were felt lined and were in chief value of brass, yet, they were denied classification as brass channels.

Based upon the foregoing considerations, it may be stated, in substance, that appellate review of the board and of this court in the *Victor*, *Eckstein*, and *Hirsch* cases has consistently held, since the Tariff Act of 1883 through the act of 1909, that zinc sheets, galvanized or nickel-plated, and steel in strips, nickel-plated, were properly classifiable as articles in chief value of metal.

The same is equally true of decisions of the board and of this court beginning with the act of 1883 down through the Tariff Act of 1930, with the exception of the *Steer* and *Schmid* cases, above described.

Inasmuch as the decisions of this court in *Steer* and *Schmid* cannot be reconciled with the decisions of the appellate courts in *Victor*, *Eckstein*, and *Hirsch*, a proper respect for the judgments of the higher courts persuades us to hold that the plated steel strips under consideration here are not the steel strips of paragraphs 316 and 315 of the statute and, being nickel plated, they are something more than steel strips.

In the absence of a more specific provision, the subject merchandise is classifiable in paragraph 397, as claimed by plaintiff. To the extent that this decision is in conflict with *Steer* and *Schmid*, those cases are in effect overruled.

The protest of plaintiff is, therefore, sustained as to entry number 765894. The protest is dismissed as to entry number 774019.

Judgment will issue in harmony with the views above expressed.